Harry A. Gerrish v. Commissioner.
Gerrish v. Commissioner
Docket No. 29807.
United States Tax Court
1951 Tax Ct. Memo LEXIS 136; 10 T.C.M. (CCH) 778; T.C.M. (RIA) 51241; August 20, 1951
*136 Llewellyn A. Luce, Esq., 937 Munsey Bldg., Washington, D.C., for the petitioner. John E. Mahoney, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent determined deficiencies in petitioner's income tax for the calendar years 1943 and 1944 in the amounts of $8,201 and $11,955.35, respectively. The questions are: 1. Did respondent's letter of May 10, 1950, determine a deficiency in petitioner's income tax liability for the calendar years 1943 and 1944? 2. Are assessment and collection of deficiencies for the calendar years 1943 and 1944 barred by the statute of limitations? 3. Did petitioner realize income on the receipt on December 1, 1943, of an option to purchase stock at a price substantially less than its fair market value? 4. Did petitioner realize income on the exercise of the option on May 16, 1944? 5. If question 3 or 4 is answered in the affirmative, then was a December 18, 1943, assignment by petitioner of a half interest in the option effective to reduce his income accordingly? Findings of Fact Petitioner is an individual residing in Leonia, New Jersey. He filed his income tax returns with the collector *137 for the fifth district of New Jersey. A member of the New Jersey Bar since 1925, petitioner became the attorney on a fee basis with a retainer in 1930 for Air Cruisers, Inc., (hereinafter sometimes called Cruisers). In 1944 petitioner also served as Cruisers' vice president and secretary. In 1943 Carter Tiffany was one of Cruisers' major stockholders, owning 3,502 shares of common stock, and also served as a vice president. Beginning in early 1942, after a disagreement with other stockholders at a corporate meeting, Tiffany became interested in selling his Cruisers stock. From that time and continuing until prior to December 1, 1943, Tiffany made seven unsuccessful efforts to sell, two of the offers being extended to associates at Cruisers, including petitioner, and the others to prospective purchasers independent of Cruisers. He never attempted to sell the stock directly to Crusiers. At the time of the third attempted sale in which Tiffany was joined by stockholders Boyle and Glover, it was suggested that a portion of the sales price be set aside for the employees, and that Tiffany contribute one-half of this fund from his individual proceeds. He refused to contribute one-half *138 but did consent to contribute on an equal basis with the other vendors. Thomas A. Vaughan, assistant treasurer for Cruisers in 1943, had been active in preparing the various financial statements made available to the prospective purchasers and was aware of Tiffany's efforts to sell. Vaughan suggested to petitioner that Tiffany sell his stock directly to Cruisers. At that time there was ill feeling between Tiffany and Boyle, also a large stockholder in Cruisers, who, due to his dominant position, had to agree to the sale before it could be consummated. Boyle was contacted, however, and was amenable to the idea. Petitioner then, acting as an intermediary between Boyle and Tiffany, arranged a private talk in November of 1943 with Tiffany to communicate the plan to him. Petitioner asked Tiffany what he would pay if petitioner sold the stock. Tiffany offered a five per cent commission. Petitioner then suggested sale to Cruisers at book value. At this meeting petitioner did not ask Tiffany for any stock for himself. At a subsequent meeting in November petitioner asked Tiffany to transfer to him 300 shares of Cruisers stock. Tiffany refused this request. Later, either by telephone *139 or at a subsequent meeting, Tiffany suggested an option method for transferring the stock. Petitioner acquiesced in this suggestion and prepared an option agreement which Tiffany executed December 1, 1943. On December 13, 1943, sale of Tiffany's remaining 3,202 shares of stock to Cruisers was consummated at $62.67 a share. Tiffany reported the sale in his 1943 return. The option agreement granted petitioner, operative until January 1, 1954, stated that for a consideration of $10 petitioner was granted the option to purchase at ten cents per share 300 shares of Cruisers stock which Tiffany was to deposit with a trustee. Contemporaneously with the execution of the option agreement Tiffany endorsed in blank and delivered to petitioner stock certificate 82 for 300 shares of Cruisers stock. Tiffany simultaneously nominated petitioner to be his proxy with the nonrevocable right to vote the stock during the period of the option. Tiffany never received the recited $10 consideration for the option nor for the stock but did not expect it. It was his understanding that it was compensation to petitioner for services rendered, the cost of transacting the sale. The option agreement was considered *140 by him as just a device to transfer the stock to petitioner. On December 18, 1943, petitioner assigned a one-half interest in the option agreement to Thomas A. Vaughan. In May 1944, petitioner printed in the body of stock certificate 82, which Tiffany had endorsed in blank, his own name and Vaughan's name; the option was formally exercised and the certificate surrendered. In conformity with the endorsement new stock certificates for 150 shares each were issued to petitioner and Vaughan. Cruisers was liquidated by action begun in the latter part of 1947 and completed in 1949. Petitioner reported liquidation dividends in the years received as capital gains using a basis of $15 for his 150 shares. On October 29, 1947, petitioner executed a a Form 872 consent agreement extending the period for assessment of income taxes for the calendar year 1944 to and including June 30, 1949. Thereafter on December 1, 1948, similar consents were executed extending the period during which 1943 and 1944 taxes could be assessed to and including June 30, 1950. In his return for 1943 petitioner reported gross income of $9,146.06; in 1944 he reported gross income of $23,186.38. No income was reported *141 in either year arising out of the option arrangement. By letter dated May 10, 1950, the respondent purported to determine the deficiencies here in issue which resulted from the addition of an item of $18,801 to reported net income for each year. A portion of that notice reads as follows: "Dear Mr. Gerrish: "You are advised that the determination of your income and victory tax liability for the taxable year ended December 31, 1943, discloses a deficiency of $8,201 and that the determination of your income tax liability for the taxable year ended December 31, 1944, discloses a deficiency of $11,955.35, as shown in the statement attached." * * *
The accompanying statement attached explained for each year these additions as follows: "(a) It has been determined that, for the taxable year [1943 and 1944], you failed to include in income, compensation received in the amount of $18,801." The fair market value of Cruisers stock in 1943 and 1944 was $62.67 a share. Opinion When the position of the parties is analyzed it becomes apparent that several of the questions presented are not in serious dispute. Petitioner's contention that he received the stock in controversy *142 as a gift rather than as compensation is controverted not only by the other party to the transaction, Tiffany, but in effect by petitioner's own brief which states in another connection that Vaughan, who also testified, "did not report * * * compensation income in his Federal income tax returns, and accordingly, his statement that the same were not compensation to him is self-serving, and entitled to little weight * * *." Of course, the identical comment can be made with respect to petitioner's own testimony. Similarly, as to the year of receipt, although respondent makes a half-hearted attempt to fasten the tax in 1944 when petitioner's option was formally exercised, cf. , he recognizes that his own witness, Tiffany, testified he never saw the trustee under the purported option agreement, never received either the option consideration nor the per share price, and when he had turned over the shares to petitioner in 1943 considered "he was finished with the deal. Then in accordance with Fred C. Hall, supra [15 T.C. 195] * * * he received * * * income in the taxable year 1943." Respondent conceded at the hearing that the income should *143 not be taxed in both years. And petitioner's position throughout is that 1943 is the correct tax year if any is. Again, as to the effectiveness of the notice of deficiency, petitioner does not contend that there was no valid waiver of the statute of limitations, as respondent seems to think, nor that the notice was not timely. No such point is made in petitioner's brief and it will not be further noticed. What petitioner does rely on is that in the same notice, respondent increased petitioner's income for both 1943 and 1944 by the same amount, and set up deficiencies for both years accordingly. It is petitioner's conclusion from this that no deficiency was determined for either year. With this we are unable to agree, and no authority is advanced to support it. The case upon which petitioner's argument depends is inapposite, as a single quotation will show. In , certiorari denied, , after pointing out that the letter in question was a request for a waiver of assessment on the basis of an agreement of deficiency already reached, the opinion comments: "The Commissioner's letter *144 of September 4, the material portions of which we have quoted, included the necessary elements of a deficiency letter as required by the above cases. The difficulty with the letter was not what it lacked, but in additional matter it included. It was coupled with a blank form closing agreement for a final settlement * * *" etc. (Italics supplied). Here, there was no additional matter upon which inadequacy of the notice can be predicated. On its face, it was valid both for what it said as the Ventura case shows, and for what it omitted, as petitioner's argument in effect concedes, for he denies in his reply brief that the deficiencies determined were in the "alternative." For all that appears in the notice, respondent had determined that income was received in both years with a tax due for each. The question is one of jurisdiction, and, of course, respondent's statement at the hearing that he was not seeking a tax for both years could not be more than a concession, with no greater effect on jurisdiction already secured than if he had reduced the amount of deficiency for which he was contending. We think the notice was valid. The most difficult question concerns the amount of stock *145 upon which petitioner's income should be based. Almost immediately upon its receipt, and still in the year 1943, petitioner turned over half of what he had received to Vaughan, and insists that if taxable at all, he is hence chargeable not with 300 shares but only with 150. Vaughan's testimony, already referred to, was similar to petitioner's in that each insisted he had received a gift. Our view of this is bottomed, like the other conclusions we have already suggested, on what the evidence indicates was the underlying reality of the whole transaction. Tiffany was eager to dispose of his stock. No outside buyers could be found. Petitioner and Vaughan between them evolved and then effected a plan for sale of the stock to the Company. [1] Tiffany was willing to pay for the kind of help he received and did so, turning over stock instead of cash. The payment was complete and final although surrounded with elusive abracadabras of postponement. There was no reason for Tiffany to make an uncompensated gift to petitioner, and we have concluded that he did not. There was equally little reason for petitioner to make a gift to Vaughan, and we think he did not. What this all leads to is that *146 petitioner in 1943 received as compensation 150 shares of stock, of a value agreed on by the present parties, and to that extent, but only so far, is the deficiency approved. Decision will be entered under Rule 50. Footnotes
1. Cf. [Dec. 17,721]; affirmed [51-1 USTC [*] 9196]; (June 29, 1951) [Dec. 18,387].↩